**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TACUMA J. M'WANZA, | 3:14-cv-00331-MMD-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| DEPUTY DIRECTOR FOSTER, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 86, 86-1 to 86-13.) Plaintiff filed a response. (ECF Nos. 92, 92-1, 92-2, 93.)[1] No reply brief was filed.

After a thorough review, the court recommends that Defendants' motion be denied.

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with his Second Amended Complaint (SAC) pursuant to 42 U.S.C. § 1983. (SAC, ECF No. 45.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP) and Ely State Prison (ESP). (*Id*.) Defendants are Renee Baker, Harold Byrne, Steve Collard, Michael Fletcher, Sheryl Foster, William Gittere, Angela Gregersen, Cade Herring,

---

[1] The court also gave Plaintiff leave to belatedly file the affidavit of inmate Kenny Richard in support of his response. (*See* ECF Nos. 100, 100-1, 101.) Defendants have moved to strike that affidavit. (ECF No. 103.) The court has issued a separate order denying that motion as the court did not need to rely on the affidavit in its determination of whether Plaintiff's claims survive summary judgment.

Dwight Neven, Michael Oxborrow and Tasheena Sandoval.

The SAC originally contained three counts. Defendants previously moved to dismiss Counts I and II of the SAC. (ECF No. 48.) Count I was dismissed, but the motion was denied as to Count II. (R&R at ECF No. 72; Order adopting R&R at ECF No. 75.) Therefore, the SAC was allowed to proceed on Counts II and III.

In Count II, Plaintiff alleges that on May 23, 2013, he was sentenced to eighteen months of disciplinary segregation and referred for the loss of 180 days of good-time credits on Offense in Custody (OIC) 358479. (ECF No. 45 at 7.) He claims he appealed the decision, and on October 23, 2013, Neven modified both disciplinary sanctions, reducing the disciplinary segregation time from eighteen months to twelve months, and the good-time credit loss from 180 days to ninety days. (*Id*.) Despite being made aware of the modifications, he alleges that Sandoval, Oxborrow, Gittere, and Baker refused to acknowledge the modification which resulted in him spending six months more than he should have in disciplinary segregation, and in being deprived of 180 instead of ninety days of good-time credit. (*Id*. at 7-13.) He asserts that he completed the modified disciplinary segregation of twelve months on May 24, 2014. (*Id*.)

Count II also contains allegations concerning the conditions in disciplinary segregation compared to those in general population. (*Id*. at 13-14.) The court construed Count II as asserting only a procedural due process claim under the Fourteenth Amendment. (ECF No. 72 at 3.)

Count III alleges that on October 23, 2013, Plaintiff was forced to strip down and walk 200 yards to the infirmary in the presence of two female staff members, and that his requests to put on clothing were denied for no legitimate penological reason. (ECF No. 45 at 16-17.) Count III was construed as asserting a violation of the Fourth Amendment. (ECF No. 72 at 3.)

Defendants move for summary judgment. With respect to Count II, they argue that Plaintiff's time spent in disciplinary segregation was for three separate disciplinary charges (OICs), and that the sentences ran consecutively; therefore, Plaintiff was not forced to spend more time than he was sanctioned in disciplinary segregation, as he alleges. Insofar as count III is concerned, Defendants argue that Plaintiff has no evidence to corroborate his allegation that he was extracted from his cell and forced to walk to the infirmary without any clothing, in view of female officers, and that he failed to exhaust

his administrative remedies.

In his response, Plaintiff argues, as to Count II, that the disciplinary sentences must have been served concurrently, and therefore, he spent additional time in disciplinary segregation than he had been sanctioned. With respect to Count III, he argues he has evidence to support his claim, and he did exhaust his administrative remedies.

## **II. LEGAL STANDARD**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See*

*Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

/ / /

/ / /

That being said,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Count II**

**1. Summary of Argument**

Defendants do not contest that Plaintiff spent more than one year in disciplinary segregation for sanctions from OICs in 2013. They argue, however, that Plaintiff's time in disciplinary segregation was not solely for OIC 358479, but for three OICs in 2013 that resulted in disciplinary segregation sanctions: OICs 355608, 358479, and 359991. (ECF No. 86 at 4.) They assert that he was ordered to serve 180 days in disciplinary segregation for OIC 355608, effective June 26, 2013; one year for OIC 358479[2], effective May 23, 2013, and ninety days for OIC 3559991, effective July 9, 2013 (for a total of 635 days). (*Id*. at 5, citing Exhibits A-E.) They assert that the sanctions ran consecutively. (ECF No. 86 at 5.) They state that his disciplinary segregation term for OIC 358479 began on May 23, 2013, and ended on May 23, 2014; it continued for six months for OIC 355608, and ended on November 23, 2014; and, his final term for OIC 359991 of ninety days ended on February 23, 2015. (ECF No. 86 at 5, citing Exhibits A-E.)

/ / /

/ / /

---

[2] Defendants acknowledge that Warden Neven modified the sanctions for OIC 358479 to twelve months in disciplinary segregation and a loss of good time credits of ninety days. (ECF No. 86 at 5.)

5

Defendants maintain Plaintiff was not required to serve more than one year in disciplinary segregation for OIC 358479; the segregation term for that offense did not implicate a liberty interest; and, summary judgment should be granted in their favor.

Plaintiff argues that the dates on OIC 355608 reflect that the time in disciplinary segregation was running concurrently with OIC 358479. (ECF No. 92 at 5, citing Ex. D.) He states that even if the ninety days was re-activated on OIC 359991, the "three (3) time-cuts" he earned should have nullified those suspended ninety days. (ECF No. 92 at 6.) He contends he should have been released on August 9, 2014, and not in October or November of 2014. (ECF No. 92 at 6, citing Ex. E, H.) He says there is no policy that requires an inmate to have a disciplinary sanction run consecutively when the inmate is already serving a sanction. (ECF No. 92 at 13.)

**2. Analysis**

OIC 355608 has an OIC date of February 9, 2013. (ECF No. 86-2 at 4, 5.) Plaintiff was served with the notice of charges on February 25, 2013. (ECF No. 86-3 at 2; ECF No. 92-1 at 2.) The hearing date was June 26, 2013. (ECF No. 86-3 at 2; ECF No. 92-1 at 2.) Plaintiff's sanctions for that OIC included the loss of appliances for sixty days and 180 days in disciplinary segregation. (ECF No. 86-2 at 5; ECF No. 86-3 at 4; ECF No. 92-1 at 2.) The effective date of the sanctions is listed as June 26, 2013. (ECF No. 86-2 at 5; ECF NO. 86-3 at 4; ECF No. 92-1 at 2.) The end date for the disciplinary segregation sanction is listed in the summary of disciplinary hearing as December 23, 2015. (ECF No. 86-3 at 4; ECF No. 92-1 at 2.)

OIC 358479 has an OIC date of April 27, 2013. (ECF No. 86-2 at 4.) Plaintiff was served with the notice of charges on April 27, 2013. (ECF No. 86-4 at 2; ECF No. 92-1 at 1.) The hearing date was May 23, 2013. (ECF No. 86-4 at 2; ECF No. 92-1 at 1.) The NDOC summary of disciplinary hearing states that Plaintiff's sanctions included eighteen months in disciplinary segregation and a 180-day "stat loss referral." (ECF No. 86-4 at 3; ECF No. 92-1 at 1.) There is also a notation of twelve months of disciplinary segregation, which presumably reflects the warden's decision to reduce the disciplinary sanction from eighteen to twelve months (*Id.*) The NDOC disciplinary history report reveals a sanction of a 180-day stat loss referral and twelve months of disciplinary segregation. (ECF No. 86-2 at 4.) The effective date for the disciplinary segregation was listed as May 23, 2013. (ECF No. 86-2 at 4; ECF No.

86-4 at 3; ECF No. 92-1 at 1.) In the copy of the disciplinary hearing summary for OIC 358479 submitted by Defendants, the end date of the disciplinary segregation was listed as May 23, 2014. (ECF No. 86-4 at 3.) In the copy of the disciplinary hearing summary submitted by Plaintiff for OIC 358479, the end date of the disciplinary segregation was listed as November 28, 2014, which appears to reflect the initial sanction of eighteen months. (ECF No. 92-1 at 1.)

OIC359991 has an OIC date of June 6, 2013. (ECF No. 86-2 at 4.) Plaintiff was served with the notice of charges on June 7, 2013. (ECF No. 86-5 at 2; ECF NO. 92-1 at 4.) The hearing date was July 9, 2013. (ECF No. 86-5 at 2; ECF No. 92-1 at 4.) Plaintiff was sanctioned to ninety days in disciplinary segregation and a loss of visiting privileges for 180 days. (ECF No. 86-2 at 4; ECF No. 86-5 at 4; ECF No. 92-1 at 4.) A 180 day suspended sanction is noted, which presumably refers to the loss of the visitation privilege. (*Id*.) The effective date of the disciplinary segregation is listed as July 9, 2013. (*Id*.) The end date of the disciplinary segregation sanction is listed as October 7, 2013. (*Id*.)

Plaintiff provides a copy of an administrative case note where Plaintiff had asked about his disciplinary segregation sanctions. (ECF No. 92-1 at 5.) The note states, in relevant part:
> DS sanctions audited on 4/30/14. 12 mos DS MJ2, MJ3 on 4/27/13. 180 days DS MJ10, MJ28 on 2/9/13. 90 days DS MJ44 on 6/6/13 (was suspended for 180 days but received another OIC OIC [sic] on 10/22/13 which instated the 90 day s[an]ction). T/C 9/5/13. guilty OIC on 10/22/13. T/C 1/22/14. T/C 4/22/14. Discussed this with CCSSII Bothe. Eligible for next T/C on 7/22/14. Current DS outdate with T/Cs applied is 11/19/14.

(ECF No. 92-1 at 5.)

Plaintiff also submitted a second level grievance response concerning an inquiry into his disciplinary segregation sanctions. (ECF No. 92-1 at 6.) The response stated, in relevant part:
> Your DS time was audited 4-30-14 and deemed correct. While not specifically outlined in AR 707 Disciplinary Manual, I was advised that the current practice is that when serving a DS sanction and you get another DS sanction for a subsequent OIC, the subsequent DS sanction is run consecutively to the previous DS sanction. You then had a third guilty MJ OIC, again while you were already serving a previous DS sanction. Even though this DS was initially suspended for 180 days clear conduct, upon being found guilty of another subsequent OIC this suspended sentence was imposed. The start date for your second DS sanction should have been entered with the start date being the day after the end date of the DS sanction you were already serving. This appears to have been a clerical or technical error. I'm not sure why the start was entered as 6-24-15 for your third DS sanction on OIC 359991, but that appears to have been another technical/clerical error. The end result of these three guilty MJ OICs was 12 months (365 days) for OIC 357479 from 5-23-13, CS 180 days from OIC 355608 and CS 90 days for

7

OIC 359991. This is a total of 635 days of DS starting 5-23-13. If you subtract three (3) 30 day time cuts you received that leaves 545 days, which was what the Care in Placement screen shows, and which has an expir[ation] date of November 19, 2014. It appears this time calculation is correct. It also appears that you had your remaining DS sanction suspended as of 7-25-14, however, should you have to be returned to DS to finish the remainder of your DS sanction I spoke to AW Byrne and he indicated he would have the above referenced issues corrected in the disciplinary hearing screen. Per AR 707.1.11.C.4 'A typographical error, spelling error or other clerical error can be repaired by correcting the problem.'

(ECF No. 92-1 at 6.)

The parties agree that Plaintiff was sentenced to disciplinary segregation for at least three separate OICs in 2013: twelve months for OIC 358479, 180 days for OIC 355608, and ninety days for OIC 359991 (a total of 635 days). The documentary evidence acknowledges that Plaintiff was granted ninety-days in time cuts, bringing this total to 545 days.

The parties dispute whether the disciplinary segregation sentences were run consecutively or concurrently, and therefore, whether Plaintiff served the amount of time he was sanctioned to, or more than the amount sanctioned for OIC 358479. Defendants maintain that the sentences ran consecutively, and therefore, Plaintiff served the time he was sentenced under all three OICs. Plaintiff, on the other hand, contends that the sentences ran concurrently, and he served more time than he was sanctioned under OIC 358479.

Defendants provide no evidence to support their argument that the sanctions ran consecutively. They summarily state that the disciplinary hearing notes do not show that the sanctions were ordered to run concurrently, so they had to have been running consecutively. (ECF No. 86 at 5:4-5.) The problem with this argument is that the disciplinary hearing notes also do not specifically state that the sanctions were ordered to run consecutively. If anything, as Plaintiff points out, the disciplinary hearing summaries provide effective dates for the three OICs that overlap, indicating that the sanctions were running concurrently. (*See* ECF No. 86-3 at 4, indicating a June 26, 2013 effective date and December 23, 2013 end date for the disciplinary segregation sanction for OIC 355608; ECF No. 86-4 at 3, indicating a May 23, 2013 effective date and May 23, 2014 end date for the disciplinary segregation sanction in OIC 358479; and ECF No. 86-5 at 4 indicating a July 9, 2013 effective date and October 7, 2013 end date for the disciplinary segregation sanction for OIC 359991.)

While Plaintiff was told in a response to a grievance about this issue that the sanctions were running consecutively (submitted in support of Plaintiff's motion and not Defendants), Defendants provide no evidence that this was actually the case. The grievance responder acknowledged that NDOC's regulations did not specifically discuss whether disciplinary sanctions ran consecutively or concurrently. The grievance responder stated that he was advised (by an unidentified person within NDOC) that multiple sanctions orders ran concurrently at that time, but there is no declaration before the court stating that this was in fact NDOC's policy, or that Plaintiff knew this to be the case. With this dispute, the court cannot make a determination as to whether Plaintiff's due process rights were violated.

In light of the existence of this genuine dispute of material fact, Defendants' motion for summary judgment should be denied.

**B. Count III**

    **1. Sufficiency of Plaintiff's Evidence**

With respect to Count III, Defendants acknowledge that the parties dispute the material facts: Plaintiff claims that he was forced to strip down and walk to the infirmary without any clothing, while Defendants maintain he was wearing clothing while he was escorted to the infirmary. (ECF No. 86 at 7, Collard Decl., ECF No. 86-6 ¶¶ 6-7; Herring Decl., ECF No. 86-7 ¶¶ 6-7; Sandoval Decl., ECF No. 86-8 ¶¶ 5-9; Gregersen Decl., ECF No. 86-9 ¶¶ 6-7; Byrne Decl., ECF No. 86-10 ¶¶ 6-9.) Defendants argue, however, that Plaintiff has not brought forth evidence to corroborate his version of events. (ECF No. 86 at 7.) As such, they contend no reasonable jury could enter a judgment on Plaintiff's behalf, and judgment should be entered in their favor. (Id.)

In his response, Plaintiff provides his own affidavit stating that he was forced to exit Cell 3 in Unit 2A naked, and asked numerous times to put on his boxers, but was still escorted out of the cell without his clothes. (Pl.'s Aff, ECF No. 92-2 at 2, 5.) He goes on to state that females, including Sandoval and Gregersen were present in Unit 2 and observed Plaintiff exiting the cell and being escorted to the infirmary while naked. (*Id.* at 3.) Plaintiff also submitted a mental health kite on November 21, 2013, where he complained about being escorted to the infirmary without clothing and in the presence

of female staff. (ECF No. 92 at 4, ECF No. 92-1 at 17.)[3]

The court does not accept Defendants' argument. Plaintiff *has* in fact submitted evidence to corroborate his own version of events—his own affidavit and a mental health kite recounting his version of events. While Defendants argue that his own statements concerning his version of events are insufficient evidence, the Ninth Circuit has stated the following on this topic: "We have previously acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that district court erred in disregarding declarations as "uncorroborated and self-serving")). "Although the source of the evidence may have some bearing on its credibility, and thus on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id*. "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id*.

In *Nigro*, the Ninth Circuit concluded that the declaration of Nigro, albeit uncorroborated and self-serving, was sufficient to establish a genuine dispute of material fact, and the district court erred in disregarding it in granting Sear's motion for summary judgment. *Id*. The weight to be assigned to the self-serving evidence "is to be assessed by the trier of fact at trial, not to be a basis to disregard the evidence at the summary judgment stage." *Id*.

The court similarly finds that Plaintiff's declaration and mental health kite recounting his version of events are sufficient to establish a genuine dispute of material fact concerning his Fourth Amendment claim. The weight to be assigned to Plaintiff's statements is a function reserved for the jury at the time of trial. Therefore, Defendants' motion for summary judgment should be denied as to Count III insofar as they argue Plaintiff has no evidence to corroborate his claim.

---

[3] Plaintiff also states that the cell extraction was videotaped. At one point he seems to indicate that the video was an exhibit to his SAC, but that is not the case. He later expressed that Defendants should be required to produce the video, indicating that it is not before the court. Discovery in this matter is closed, and Plaintiff never filed a motion to compel production of the video; therefore, there is not a basis for the court to require its production at this point. In any event, review of the video is not necessary for the court's determination of this motion.

**2. Exhaustion**

Defendants also argue that Plaintiff failed to properly exhaust his administrative remedies relating to his complaint he was escorted to the infirmary naked. (ECF No. 86 at 8.) They acknowledge that he grieved this matter on November 5, 2013, but contend that he abandoned his claim he was escorted to the infirmary without clothing in the first and second level grievances because those levels focused solely on being required to turn around on the tier without clothing. (*Id*. at 8-9, citing Ex. M.)

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Preliminarily, the court points out that in support of this argument Defendants have only submitted NDOC's Inmate Grievance History Report and not the actual grievance documentation submitted by the inmate. In the court's experience reviewing numerous motions asserting the exhaustion defense, the summary of the inmate grievance provided in the NDOC grievance history report often does not contain all of the detail of the inmate's grievance. Therefore, if a defendant is asserting, as Defendants are here, that an inmate's grievance was insufficient in some respect, the actual grievance documentation and not just the summary should be submitted in support of a motion for summary judgment.

///

Additionally, where the grievance system does not state the level of specificity required for exhaustion, the grievance is required to alert the prison to the nature of the wrong for which the redress is sought. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Defendants did not submit the version of the administrative regulation (AR) in effect at the time Plaintiff filed his grievance so the court can determine what Plaintiff was required to include in terms of specificity of the grievance. Even if the court had the pertinent grievance and regulation documentation before it, the court finds Defendants' argument fails because Defendants acknowledge Plaintiff alerted them to the nature of the wrong for which he sought redress in his informal level grievance: that he was forced to strip down and walk in front of female correctional employees.

Therefore, Defendants' motion should be denied insofar as they argue Plaintiff failed to exhaust his administrative remedies as to this claim.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Defendants' Motion for Summary Judgment (ECF No. 86).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: September 19, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE